Joseph Miskabi (SBN 279735)
LAW OFFICES OF JOSEPH MISKABI, APC
8730 Wilshire Blvd, Suite 310
Beverly Hills, CA 90211
Phone: 424-245-5740
Fax: 866-202-9176
joseph@miskabilaw.com
*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **TODD FRIEDMAN,** | Case No. 2:16-cv-01269-SVW-FFM |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SANCTIONS** |
| vs. | |
| **EVERQUOTE, INC., D/B/A CHEAPERAUTOCOVERAGE.COM; CLICK CASH MANAGEMENT, INC. and DOES 1-10, inclusive, and each of them,** | |
| Defendants. | |

_____

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant has filed a frivolous Motion for sanctions, applying a legal sledgehammer in an attempt to bully Plaintiff into dismissing his meritorious class action complaint.  In the same breath, Defendant answered the Complaint, choosing to put the case at issue instead of filing a motion to dismiss.  The vehicle of sanctions is meant as a shield, not a sword, and its application in the case at bar goes beyond raising eyebrows, it may itself be sanctionable.

Plaintiff has brought this meritorious class action complaint against Defendants Everquote, Inc. D.B.A. Cheaperautocoverage.com ("Everquote"), and Click Cash Management, Inc. ("CCM"), jointly and severally, for their respective roles in the transmission of unsolicited advertisement text messages, to Plaintiff and other putative class members, without prior express consent, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., ("TCPA"), thereby invading Plaintiff's and putative class members' privacy.  The messages at issue are alleged to have been sent using an Automatic Telephone Dialing System as defined by 47 U.S.C. § 227 (a)(1) and prohibited by 47 U.S.C. § 227 (b)(1)(A) ("ATDS").

Plaintiff has alleged that CCM actually transmitted the text messages at issue, and that Everquote hired CCM to solicit its products and services to the public, granting it license to use its trademarks, trade name, and other intellectual property.  The unsolicited text message at issue which was sent to Plaintiff solicited Plaintiff to purchase auto insurance, contained pricing information relating to Everquote's services, and contained a hyperlink that took Plaintiff to Everquote's website.  Any reasonable consumer who received such a text message would have believed that Everquote was involved, whether directly, indirectly, or tacitly, in some way in the transmission of the text message at issue.

Plaintiff has alleged vicarious liability through actual authority, ratification and apparent authority.  Discovery will be necessary to determine application of these three factually intensive theories of liability.  But what is clear from these facts is that Plaintiff has put forth numerous good faith bases of Everquote's vicarious liability under the TCPA.

Plaintiff thoroughly laid out these basic facts to Defendant, as well as the legal standard for vicarious liability under the TCPA, according to the FCC's 2013 Declaratory Ruling in a thorough responsive letter during the safe harbor period.  Most regrettably, Defendant ignored Plaintiff's letter, and merely stated, without explanation, that Plaintiff had failed to assert a good faith basis for the complaint, and would proceed with its Motion.  Then Defendant filed its Motion for Sanctions, which is actually styled as a Motion for Summary Judgment, lacking a good faith basis to do so.

Defendant admits that Plaintiff received the text message at issue, and that it hired CCM to perform lead generation services in the course of a marketing contract between Everquote and CCM, but casts blame on CCM as having acted outside the scope of its actual authority in so sending this message to Plaintiff.  This may end up being true, but it would not dispense with Plaintiff's claims under the standards cited by the FCC, which must be given deference.  Nor is a motion for sanctions the appropriate vehicle for making such a determination, especially when there are disputes over the facts and the application of the law.  Indeed, such disputes are the very reason that good faith litigation exists.

For these reasons, as more fully described below, Plaintiff respectfully requests that Defendant's Motion be denied in full.

## II.     THE TELEPHONE CONSUMER PROTECTION ACT (TCPA)

The Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA") is "aimed at protecting recipients from the intrusion of receiving

unwanted communications." *St. Paul Fire & Marine Ins. Co. v. Onvia, Inc.,* 2007 U.S. Dist. LEXIS 11650, *11 (W.D. Wash. Feb. 16, 2007).   Indeed, the U.S. Supreme Court has noted that consumers are outraged over the proliferation of automated telephone calls that are intrusive, nuisance calls, found to be an invasion of privacy by Congress.  *See Mims v. Arrow Fin. Servs. LLC,* 132 S. Ct. 740, 745 (2012).

Congress enacted the TCPA in 1991 amidst an unprecedented increase in the volume of telemarketing calls to consumers in America.   The TCPA combats the threat to privacy[1] being caused by the automated marketing practices, stating it is unlawful:

> (A) **to make any call** (other than a call made for emergency purposes or made with the prior express consent of the called party) **using any automatic telephone dialing system** or an artificial or prerecorded voice—. . .
> (iii) **to any telephone number assigned to a** paging service, **cellular telephone service**...

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).  According to the express text of the TCPA, the statute requires the calls to be made with an ATDS, which Congress defines as "equipment which has the *capacity* (A) to store or produce telephone numbers to be called, using a random or sequential number generator;

---

[1] *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009) (The "TCPA was enacted in response to an increasing number of consumer complaints arising from the increased number of telemarketing calls," and that "consumers complained that such calls are a 'nuisance and an invasion of privacy.'").   The Federal Communications Commission ("FCC") confirmed in 2003 that "telemarketing calls are even more of an invasion of privacy than they were in 1991," and "we believe that the record demonstrates that telemarketing calls are a substantial invasion of residential privacy, and regulations that address this problem serve a substantial government interest." *Rules and Regulations Implementing The Telephone Consumer Protection Act of 1991*, 18 F.C.C.R. 14014 (2003), F.C.C. Comm'n Order No. 03-153, modified by 18 F.C.C.R. 16972.

and (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (emphasis added).

To demonstrate a TCPA violation, Plaintiff need only show that Defendant (1) placed a call using an automatic telephone dialing system; (2) to any telephone number assigned to a cellular telephone service; (3) without the prior express consent of the Plaintiff.[2]  *See Meyer v. Portfolio Recovery Assocs., LLC,* 2011 U.S. Dist. LEXIS 156610, *21 (S.D. Cal. Sept. 14, 2011).  Section 227(b)(1) of the TCPA expressly applied to "any call" made using an ATDS.  47 U.S.C. § 227(b)(1).  The Ninth Circuit has held that this section of the TCPA should be analyzed as a content-neutral regulation.  *Moser v. F.C.C.,* 46 F. 3d 970, 973 (9th Cir. 1995).  A single automated call placed via an ATDS without prior express consent violates the TCPA.  *See Satterfield,* 569 F. 3d at 956.  The Ninth Circuit has definitively held that SMS text messages qualify as calls within the purview of the TCPA.  *Id.*, at 952.

The Federal Communications Commission ("FCC") is expressly granted the authority to "prescribe regulations to implement the requirements" of the TCPA. 47 U.S.C. § 227(b)(2).  On May 9, 2013, the FCC issued a Declaratory Ruling, which addressed whether and when the TCPA contemplates indirect liability for unlawful calls made by an independent telemarketer.  In issuing said Declaratory Ruling, the FCC held that an entity "may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer."[3]  In the Matter of The Joint Petition Filed by Dish Network,

---

[2] Notably, Defendant does not challenge the sufficiency of Plaintiff's allegation that Plaintiff was called on his "cellular" telephone, or that the calls were placed without prior express consent of Plaintiff, which must mean that Defendant believes these elements are properly pled.

[3] "The term seller means the person or entity on whose behalf a telephone call or message is initiated for the purpose of encouraging the purchase or rental of, or

LLC, et al., CG Docket No. 11-50 (FCC 13-54), 28 FCC Rcd 6574, 6582 ¶ 24 (2013) ("2013 FCC Ruling").  In so ruling, the FCC held as follows:

> "In doing so, we clarify that while a seller does not generally "initiate" calls made through a third-party telemarketer within the meaning of the TCPA, it nonetheless may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers" (2013 FCC Order at ¶ 1).

> "a seller may be liable for violations by its representatives under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification." *Id.* at ¶ 28.[4]

> "The classical definition of "agency" contemplates "the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control." Potential liability under general agency related principles extends beyond classical agency, however. A principal may be liable in circumstances where a third party has apparent (if not actual)

---

investment in, property, goods, or services, which is transmitted to any person." 47 CFR 64.1200(f)(9).

[4] *Meyer v. Holley*, 537 U.S. 280, 285 (2003) (holding that Fair Housing Act imposes vicarious liability for racial discrimination according to traditional agency principles, as outlined in HUD regulations); *American Society of Mechanical Engineers, Inc. v. Hydrolevel Corp.*, 456 U.S. 556, 565-574 (1982) (holding that "general principles of agency law," including "apparent authority theory," may establish a basis for liability in private antitrust actions under 15 U.S.C. § 15); *American Telephone and Telegraph Co. v. Winback and Conserve Program, Inc.,* 42 F.3d 1421, 1427-1440 (3d Cir. 1994) (general agency principles, including apparent authority, apply to determine liability in private damages action for alleged false designation of origin under section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)); *Accounting Outsourcing, LLC v. Verizon Wireless Personal Communications, L.P.*, 329 F. Supp.2d 789, 794-95, 805-06 (M.D. La. 2004) (liability in private TCPA action under section 227(b)(3) for violation of prohibitions against unsolicited fax advertisements may be predicated on agency doctrines of vicarious liability, because to construe the statute otherwise would effectively allow "an end-run around the TCPA's prohibitions").

authority. Such "[a]pparent authority holds a principal accountable for the results of third-party beliefs about an actor's authority to act as an agent when the belief is reasonable and is traceable to a manifestation of the principal." Other principles of agency law may support liability in particular cases. For example, a seller may be liable for the acts of another under traditional agency principles if it ratifies those acts by knowingly accepting their benefits. Such ratification may occur "through conduct justifiable only on the assumption that the person consents to be bound by the act's legal consequences."" *Id.* at ¶ 34.

"While section 227(b) does not contain a provision that specifically mandates or prohibits vicarious liability, we clarify that the prohibitions contained in section 227(b) incorporate the federal common law of agency and that such vicarious liability principles reasonably advance the goals of the TCPA." *Id.* at ¶ 35.

In considering the issue of vicarious liability under the TCPA, the 9th Circuit echoed the FCC's ruling in stating that the TCPA "is silent as to vicarious liability. We therefore assume that Congress intended to incorporate 'ordinary tort-related vicarious liability rules.'" *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877 (9th Cir. Cal. 2014) (citing *Meyer v. Holley*, 537 U.S. 280, 285 (2003)).

## III. STATEMENT OF FACTS

Plaintiff alleges that beginning in or around February of 2016, Defendants contacted Plaintiff on his cellular telephone, for the purpose of sending Plaintiff spam advertisements and/or promotional offers, via text message, including a text message sent to and received by Plaintiff on or about February 9, 2016. First Amended Complaint, Dkt. No. 24, ¶ 9 (hereinafter "FAC").[5] Plaintiff received a text message from Defendants that read:

---

[5] The factual allegations in Plaintiff's First Amended Complaint have not changed from the filing of the original Complaint (Dkt. No. 1) with the limited exception that Plaintiff has added CCM as an additional Defendant, and clarified that CCM actually sent the text messages at issue, that it was hired by Everquote to perform

Tim
REMINDER: You still qualify for 19.00/Month Auto Insurance. Click Below.
http://po.st/WTFIga
Reply STOP to stop or HELP for help  *Id*. at ¶ 12.

Plaintiff, on or about February 9, 2016, responded to Defendants' text message notification by replying "Stop".  *Id*. at ¶ 13.  A true and correct copy of the exchange can be seen below:





Declaration of Todd M. Friedman ("Friedman Decl.") at ¶¶ 2-4, Ex. A.  Plaintiff thereafter clicked on the link, and was sent to a website bearing the URL www.cheaperautocoverage.com, which is a website owned and operated by

marketing and lead generation services on Everquote's behalf, and that Everquote is vicariously liable for the text messages at issue.

Defendant Everquote.  ("Friedman Decl.") at ¶¶ 5-7. A true and correct copy of the page that Plaintiff was directed to is seen here:



*Id*. at ¶¶ 5-7, and Ex. B.  Plaintiff and his counsel conducted an investigation, and determined that www.cheaperautocoverage.com and Everquote are one in the same, sharing the same physical address, and operating in the same industry (auto insurance).  *Id*. at ¶¶ 6-7; Declaration of Joseph Miskabi ("Miskabi Decl.") at ¶¶ 3-5, Ex. A.  By all accounts, the URL www.cheaperautocoverage.com was owned and operated by Everquote.  After reviewing these materials, Plaintiff and his counsel reasonably believed that Everquote, or a company hired on its behalf,

transmitted the text message to Plaintiff.  Friedman Decl. at ¶ 7; Miskabi Decl. at ¶ 5.   In fact, Defendant Everquote has confirmed that these allegations are accurate.

Everquote is alleged to have contracted CCM for the purposes of generating leads for Everquote.  FAC. at ¶ 10.  Plaintiff alleges that CCM sent the text message shown above to Plaintiff, on behalf of Everquote, to solicit Everquote's services to Plaintiff.  *Id*. at 14.  Plaintiff further alleges that CCM was acting in its capacity as an agent of Everquote when it sent Plaintiff the text message above.  *Id*. ¶ 15.  Specifically, Plaintiff alleges that Everquote contracted CCM to perform marketing services to Everquote, for the purpose of lead generation for Everquote's insurance services.  Pursuant to this contractual arrangement, Everquote licenses use of its intellectual property, including use of its trademarks, trade name, logos, and service marks.  Everquote also provides, in the course of its contract with CCM, confidential information relating to processes, pricing and other information which may be characterized as a trade secret, normally within the exclusive control of Everquote.  *Id*. at ¶ 16.  Plaintiff further alleges that Everquote maintains the ability to control numerous aspects of CCM's contractual relationship, and knew, or should have known that CCM was using ATDS technology for the purpose of marketing Everquote's services.  *Id*. at ¶ 17.  Plaintiff asserts that as a reasonable consumer, he reasonably believed that the text messages were generated by Everquote or its authorized agent.  *Id*. at ¶ 23.[6]

Plaintiff has never contacted nor conducted any business with either Defendant in any fashion, prior to receiving the text message at issue, including never having visited any of Defendants' websites.  *Id*. at 17.  Plaintiff alleges that

---

[6] These allegations support Plaintiff's theories of actual authority, apparent authority, and ratification, any one of which would be sufficient to demonstrate Everquote's vicarious liability.

the text message at issue was sent to Plaintiff's cell phone using an ATDS, without prior express consent, in violation of the TCPA. *Id*. at ¶¶ 18, 21, and 22.

Everquote does not dispute these facts. Everquote instead takes a legal position that Plaintiff's assertion of these facts, on a vicarious liability theory as to Everquote, is somehow in bad faith, and worthy of sanctions.

## IV.   LEGAL STANDARD

Fed. R. Civ. P. 11 ("Rule 11") is designed to "deter frivolous claims and curb abuses of the legal system, thereby speeding up and reducing the costs of litigation." *Binghamton Masonic Temple v. Bares*, 168 F.R.D. 121, 126 (N.D.N.Y. 1996). The rule is intended to prevent frivolous filings and filings made for an improper purpose, such as personal or economic harassment. *Zaldivar v. City of Los Angeles*, 780 F.2d 823, 830 (9th Cir. 1986). "A party acts in bad faith only when the claim brought is entirely without color and has been asserted wantonly, for purposes of harassment or delay, or for other improper reasons." *Sterling Energy, Ltd. v. Friendly Nat'l Bank*, 744 F.2d 1433, 1435 (10th Cir. 1984). Courts have repeatedly recognized that the exception is a narrow one and may be resorted to only in exceptional cases. E.g., *Autorama Corp. v. Stewart*, 802 F.2d 1284, 1287 (10th Cir. 1986). Rule 11 is intended to deter baseless filings in district court and imposes a duty of "reasonable inquiry" so that anything filed with the court is "well grounded in fact, legally tenable, and not interposed for any improper purpose." *Cooter & Gell v. Hartmarx Corp*., 496 U.S. 384, 393, (1990).

The imposition of Rule 11 sanctions should be approached with caution and should not be imposed so as to "chill creativity or stifle enthusiasm or advocacy." *Binghamton*, 168 F.R.D. at 126. A court must employ a standard of objective reasonableness to determine whether or not a Rule 11 violation has occurred. *Business Guides, Inc. v. Chromatic Communications Enters., Inc*., 498 U.S. 533, 548, 111 S. Ct. 922, 931-32, 112 L. Ed. 2d 1140 (1991). An argument

is frivolous and subject to legal sanctions if, under an objective standard of reasonableness, it is clear that no chance of success and no reasonable argument to extend, modify or reverse the law as it stands exists. *Morley v. Ciba-Geigy Corp.*, 66 F.3d 21, 25 (2nd Cir. 1995). *Columbia Gulf Transmission Co. v. United States*, 966 F. Supp. 1453, 1465 (S.D. Miss. 1997).

"Sanctions not only may have a severe effect on the individual attorney sanctioned but also may deter future parties from pursuing colorable claims." *Primus Auto. Fin. Servs. V. Batarse*, 115 F.3d 644, 650 (9th Cir. Cal. 1997). Moreover, the Ninth Circuit has cautioned that "[s]anctions should be reserved for the 'rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose.'" *Primus Auto. Fin. Servs., Inc. v. Batarse*, 115 F.3d 644, 649 (9th Cir. 1997), quoting *Operating Eng'rs Pension Trust v. A-C Co.*, 859 F.2d 1336, 1344 (9th Cir. 1988)).

It is well established that the mere lapse of the safe harbor period is not sanctionable.  Here, the issue of "improper purpose" need not be considered. Rather, the proper inquiry of a reviewing court is whether Plaintiff's complaint was knowingly frivolous. *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987) (where a complaint is at issue, the improper purpose analysis is not applicable because a non-frivolous complaint cannot be filed for an improper purpose). A complaint is factually frivolous if "a competent attorney, after reasonable inquiry, could not form a reasonable belief that the complaint was well founded in fact." *Id*. at 887. Further, "a complaint that is well-grounded in fact and law cannot be sanctioned regardless of counsel's subjective intent." *Rachel v. Banana Republic, Inc.*, 831 F.2d 1503, 1508 (9th Cir. Cal. 1987).  Thus, "the key question in assessing frivolousness is whether a complaint states an arguable claim -- not whether the pleader is correct in his perception of the law." *Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1159 (9th Cir. 1987).

## V.    LEGAL ARGUMENT

### a.    THE TCPA IMPOSES VICARIOUS LIABILITY WHERE THERE IS EITHER ACTUAL AGENCY AUTHORITY, APPARENT AUTHORITY OR RATIFICATION, AND DEFENDANT IS PLAUSIBLY ALLEGED TO BE LIABLE UNDER EACH OF THESE THEORIES OF LIABILITY

As a preliminary matter, it must be stressed again that an entity "may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer." 2013 FCC Ruling at ¶ 24.  This application of vicarious liability principles includes formal agency, apparent authority, and ratification, each of which has been upheld by the Ninth Circuit. *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 877 (9th Cir. Cal. 2014) (citing *Meyer v. Holley*, 537 U.S. 280, 285 (2003)).  The court in *Mey v. Monitronics Int'l, Inc.*, 959 F. Supp. 2d 927 (N.D. W.V.A 2013) in ruling on a motion for summary judgment, faced the issue of vicarious liability for calls allegedly placed on defendants' behalf by defendant Versatile Marketing Solutions, Inc. in violation of the TCPA.  Relying on the 2013 FCC Ruling, which references the definition of seller provided by 47 CFR 64.1200(f)(9), the *Mey* court explained that "the determination of whether an entity is a 'seller' turns on whether a telephone solicitation is made on its behalf." *Id.*

It is a well-established maxim of agency law that if a principal has given an agent general authority to engage in a class of transactions, subject to limits known only to the agent and the principal, third parties may reasonably believe the agent to be authorized to conduct such transactions and need not inquire into the existence of undisclosed limits on the agent's authority.  Restatement 3d of Agency, § 2.03.  "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations." Restatement 3d of Agency, § 2.03.  In order to reach a finding of apparent authority on the part of

Everquote, the Court need not find that Everquote itself directly communicated with the end-users of its equipment. A Principal may make manifestations regarding an agent's authority in many ways. In some settings, the principal's acts speak so loudly that explicit verbal communication is unnecessary. Similarly, an indirect route of communication between a principal and third party may suffice, especially when it is consistent with practice in the relevant industry. A principal may also make a manifestation by placing an agent in a defined position in an organization or by placing an agent in charge of a transaction or situation. Third parties who interact with the principal through the agent will naturally and reasonably assume that the agent has authority to do acts consistent with the agent's position or role unless they have notice of facts suggesting that this may not be so. *Id.*

Additionally:

> If a principal has given an agent general authority to engage in a class of transactions, subject to limits known only to the agent and the principal, third parties may reasonably believe the agent to be authorized to conduct such transactions and need not inquire into the existence of undisclosed limits on the agent's authority. *Id.*

In delineating when apparent authority can be found so as to result in vicarious liability under the TCPA on the part of a seller for the conduct of a telemarketer, the 2013 FCC Ruling listed six different factors that can be an indication of apparent authority:

1. "[e]vidence that the seller allows the outside sales entity access to information and systems that normally would be within the seller's exclusive control"

2. "access to detailed information regarding the nature and pricing of the seller's products and services or to the seller's customer information"

3. "[t]he ability by the outside sales entity to enter consumer information into the seller's sales or customer systems"

4. "the authority to use the seller's trade name, trademark and service mark"

OPPOSITION TO MOTION FOR SANCTIONS - 14

5. "that the seller approved, wrote or reviewed the outside entity's telemarketing scripts"

6. "if the seller knew (or reasonably should have known) that the telemarketer was violating the TCPA on the seller's behalf and the seller failed to take effective steps within its power to force the telemarketer to cease that conduct.

The FCC went on to observe that "at a minimum, evidence of these kinds of relationships – **which consumers may acquire through discovery, if they are not independently privy to such information** – should be sufficient to place upon the seller the burden of demonstrating that a reasonable consumer would not sensibly assume that the telemarketer was acting as the seller's authorized agent…. nothing in our ruling requires a consumer to prove at the time of their complaint (rather than reasonably allege) that a call was made on the seller's behalf" 2013 FCC Order at ¶ 46 and Ftn. 139.[7]

The court in *Mey*, in ruling on the issue of Defendant UTCFSA's apparent authority for telephone calls allegedly placed on its behalf, held, based on the 2013 FCC Ruling, that "it is patently clear that Mey, the non-movant, has met her burden at summary judgment and adduced more than a scintilla of evidence that VMS acted "on behalf of" Monitronics and UTC, exposing them to potential liability under 47 U.S.C. § 227(c)." *Mey*, 959 F. Supp. 2d at 932.  This holding was based on the fact that just like the relationship between NPS and RA in this action, "both entities have agreements with VMS that enable it to hold itself out

---

[7]     (1)     Ratification is the affirmance of a prior act done by another, whereby the act is given effect as if done by an agent acting with actual authority.

(2)     A person ratifies an act by  (a) manifesting assent that the act shall affect the person's legal relations, or (b) conduct that justifies a reasonable assumption that the person so consents.  Restatement 3d of Agency, § 4.01. "[K]nowing acceptance of the benefit of a transaction ratifies the act of entering into the transaction. This is so even though the person also manifests dissent to becoming bound by the act's legal consequences." *Id.*, Comment d., ¶ 2.

as an "authorized dealer" of Minotronics' and UTC's products." *Id*.  The *Mey* court emphasized the importance of this factor by stating that "[d]rawing all permissible inference in Mey's favor, that fact alone could lead a reasonable finder of fact to conclude that UTC and Monitronics cloaked VMS with the apparent authority to act on their behalf, thus exposing them to liability under § 227(c)." *Id*. (emphasis added).

Just this week, the Sixth Circuit applied these same principles in the matter of *Siding and Insulation Co., v. Alco Vending, Inc*., Case No. 15-3551 (6th Cir. May 9, 2016), and reversed an order granting summary judgment, in a TCPA case involving vicarious liability stemming from junk faxes sent without consent by a rogue vendor (almost exactly the same scenario in the case at bar).  Defendant had hired a vendor to perform lead generation services, and the vendor promised, as a condition of its contract, that its advertising that it carried out would be "100 percent legal" because the vendor had a "full and open relationship" with the potential recipients of the offending messages.  The Sixth Circuit nonetheless held that there was sufficient evidence to show that the faxes were sent on behalf of defendant, who was therefore viewed as a culpable jointly and severally liable party.  The most critical fact was that the defendant's trade name was used in the illegal messages at issue.  This Sixth Circuit decision virtually mirrors the case at bar, and speaks to Plaintiff being likely to prevail on a summary judgment motion, and yet Defendant believes Plaintiff's Complaint is sanctionable.[8]

Plaintiff has outlined a good faith basis for bringing the complaint under the various vicarious liability theories.  The claims are colorable enough that there

---

[8] Plaintiff has also learned that a similar TCPA matter on behalf of recipients of unauthorized solicitation text messages has been filed against Everquote in the past several weeks.  See Miskabi Decl. Ex. C, *Yvonne Lester v. Everquote, Inc*. Case No. 1:16-cv-10651-MLW U.S. District Court, District of Massachusetts.

have been multiple class actions on the same grounds filed against Everquote for this same conduct.  Plaintiff has not only pled that the agents who sent the text messages at issue were contracted to do so by Everquote, but further described who the agents were, and a plausible basis upon which Everquote may be vicariously liable.   In fact, Plaintiff and his counsel have attached specific evidence to their declarations demonstrating the efforts they undertook in investigating this case.  Notably, Plaintiff received a text message which, by all accounts, appeared to have been sent to Plaintiff directly by Defendant Everquote, as it directed Plaintiff to one of Everquote's many websites.  The website at issue: www.cheaperautocoverage.com, indicated that it was operated from the same physical address as Everquote's corporate office, and further, was facially a website which permitted a consumer to enter in their information to request a price quote from the insurance provider for their auto insurance, the same exact same type of business that comprised Everquote's core business model (insurance).

Plaintiff has not only pled that the Agent (CCW) who texted Plaintiff was doing so on behalf of Everquote (to sell its services and thereby earn a commission, no doubt), but in fact, Plaintiff and Defendant have both attached evidence which substantiates these allegations.   Indeed, Defendant's own evidence sent to Plaintiff during the safe harbor period supports Plaintiff's allegations that CCM was a hired agent of Everquote, and was enlisted to perform lead generation services on its behalf.  Declaration of Thomas Revesz in Support of Defendant's Motion for Sanctions, Dkt. No. 16-1 Ex. A, ("Revesz Decl.").  Moreover, Everquote does not dispute that www.cheaperautocoverage.com was

its website, which it operated.[9]  Everquote merely disputes that it was the entity that sent the text messages at issue.[10] But as the FCC definitively held in its 2013 Order, this is hardly the standard for determining liability under the TCPA, and it is even further from the standard for determining whether to apply sanctions under Rule 11, for filing a frivolous complaint.  Defendant's Motion is the only thing frivolous at issue before the Court, and its Motion should be summarily denied.

### B. PLAINTIFF'S CLAIMS AGAINST EVERQUOTE DO NOT VIOLATE RULE 11 BECAUSE PLAINTIFF HAS ASSERTED A GOOD FAITH BASIS FOR LIABILITY AGAINST EVERQUOTE

Defendant Everquote alleges that Plaintiff's TCPA claims are frivolous. Defendant should be reminded that (as stated above) the "the key question in assessing frivolousness is whether a complaint states an arguable claim – not whether the pleader is correct in his perception of the law." [11] *Jensen Electric Co. supra* at 1329 (citing *Hudson v. Moore Business Forms, Inc.*, 836 F.2d 1156, 1159 (9th Cir. 1987). Here, Plaintiff's Counsel has conducted a reasonable

---

[9] The website has since been removed from the internet and is no longer publically available, except through web archiving tools.  Plaintiff sincerely hopes that Defendants have preserved evidence of this website, and have not destroyed evidence in response to this litigation.

[10] Everquote's arguments that the contract expressly prohibits telephone marketing certainly has nothing to do with the analysis of either apparent authority or ratification.

[11] "Moreover, even if Styron was wrong about Osborne's liability, 'we are reluctant to impose sanctions for factual errors, especially errors in papers filed before an opportunity for discovery, if the litigant has conducted a reasonable inquiry into the facts.'" *Jensen Electric Co.*, 873 F.2d at 1330 (Schroeder J. concurring) (quoting *Greenburg*, 822 F.2d at 887). "To warrant sanctions, a complaint must be 'baseless' and 'lacking in plausibility.'" Id. (quoting *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1472 (9th Cir. 1987)).

inquiry into the facts and believes Plaintiff has colorable TCPA claim, against both Everquote and CCS.

As described above, the facts are straightforward: Plaintiff received an unsolicited text message via an ATDS, which directed Plaintiff to go to Everquote's website to purchase automotive insurance from Everquote. Everquote hired CCS to generate leads on its behalf.  In the course of its contract, Everquote provided CCS with trade secret information relating to its pricing, and license to use its intellectual property.  CCS transmitted the text message to Plaintiff and other putative class members.  Everquote no doubt benefitted from these marketing efforts of its agent, regardless of whether or not it specifically authorized them.  Plaintiff reasonably believed that the text message at issue was sent by Everquote, or its authorized agent. [12]

Regardless of whether Plaintiff's allegations surrounding Everquote's

_____

[12] To assume that Plaintiff has no good faith basis to bring this case against Everquote would be to assume that <u>the only reasonable conclusion</u> to draw from receiving a solicitation text message that directed one to visit a company's website, was that the company whose website you were being directed to not only had no knowledge of the lead generator's services or actions, nor any involvement (no matter how tangential) in the transmission of the offending messages, but moreover, did not benefit <u>in any way</u> from the transmission of the message to that consumer, and rather, that some <u>completely independent company</u>, of its own volition, sent the message and started randomly soliciting consumers to go check out another business on their own <u>without any financial motive whatsoever</u>.  What an outlandish position Everquote has taken.  Even if that were what happened (it's not what happened, as Defendant's own evidence makes clear), to file a sanctions motion and take the position that this was a bad faith filing is ridiculous.  Defendant has only done this because Plaintiff is a well-respected consumer protection attorney in his own right.  Defendant and its attorneys (who litigate against Plaintiff frequently) are using this Motion as a vehicle to tarnish Plaintiff's professional reputation, and threaten him into dismissing a meritorious case.  This type of scorched earth conduct is shameful all around.

vicarious liability prove to withstand the scrutiny of a motion for summary judgment (after the opportunity to review all evidence in discovery), it is clear that Plaintiff's claims have merit, and were filed in good faith, upon the belief that Everquote either sent the messages itself, hired someone to do it, knew about the fact that an unauthorized agent was doing it, and/or that a reasonable consumer in receiving these messages, would reasonably believe that the message was transmitted by an authorized agent of Everquote. Defendant's argument seems to be directed towards it not being vicariously liable (a question best suited for a summary judgment motion) as opposed to the issue of whether Plaintiff has filed a bad faith case. Defendant may disagree with Plaintiff's legal position, but that does not give it a basis to request sanctions.

It would be unreasonable for Plaintiff to be expected to know the full nuances of all communications between Everquote and CCW at the pleadings stage. What is reasonable however is Plaintiff's and his counsel's conclusion that either Everquote or its authorized agent sent the text messages to Plaintiff. After all, the text message directed Plaintiff to Everquote's website, where Plaintiff was directed to browse its products and services. Surely it would be an absurd result for Plaintiff to have concluded anything differently. Sanctions are not appropriate here.

## VI.  CONCLUSION

The purpose of Rule 11 is to ensure that an attorney makes an investigation as to the merits of the case. *Rhinehart v. Stauffer*, 638 F.2d 1169, 1171 (9th Cir. Cal. 1979). The evidence here establishes a reasonable pre-filing inquiry on the part of Plaintiff's Counsel. When a plaintiff's lawyer has engaged in a reasonable pre-filing inquiry, sanctions will not be imposed. *Nasatka v. Delta Scientific Corp.*, 58 F.3d 1578 (Fed. Cir. 1995).

Sanctions should only be imposed in the "most egregious situation, lest lawyers be deterred from vigorous representation of their clients. *United Nat'l*

*Ins. Co. v. R&D Latex Corp.*, 242 F.3d 1102, 1115 (9th Cir. 2001) (citing to *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 341 (2d Cir. 1999) ("We are cognizant of the unique dilemma that sanctions present. On the one hand, a court should discipline those who harass their opponents and waste judicial resources by abusing the legal process. On the other hand, in our adversarial system, we expect a litigant and his or her attorney to pursue a claim zealously within the boundaries of the law and ethical rules.").    "Rule 11 sanctions may be imposed only in response to claims that are not 'warranted by existing law or by a non-frivolous argument for the extension, modification or reversal of existing law.'"  *Id.*  (quoting Fed. R. Civ. P. 11(b)(2)).

Consequently, Defendant's Motion is without merit and should be denied.


Dated:  May 16, 2016                    Respectfully submitted,

LAW OFFICES OF JOSEPH MISKABI, APC

By:     /s/Joseph Miskabi
        Joseph Miskabi, Esq.
        Law Offices of Joseph Miskabi, APC
        Attorney for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

Filed electronically on this 16th day of May, 2016, with:

United States District Court CM/ECF system

Notification sent electronically on this 16th day of May, 2016, to:

Honorable Judge Stephen V. Wilson
United States District Court
Central District of California

Joshua Briones
BLANK ROME LLP

<u>/s/Joseph Miskabi</u>
Joseph Miskabi, Esq.
Law Offices of Joseph Miskabi, APC
Attorney for Plaintiff